J-A09044-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JESSICA LYNN RAKER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| v. | : | |
| | : | |
| | : | |
| BAR-B-Q PIT, INC. | : | |
| | : | |
| Appellant | : | No. 1390 MDA 2016 |

Appeal from the Order Entered July 21, 2016
In the Court of Common Pleas of Berks County
Civil Division at No(s):  14-1877

BEFORE:   GANTMAN, P.J., SHOGAN, J., and OTT, J.

MEMORANDUM BY GANTMAN, P.J.:                **FILED OCTOBER 18, 2017**

Appellant, Bar-B-Q Pit, Inc. ("Bar-B-Q Pit"), appeals from the order of the Berks County Court of Common Pleas, which directed the Prothonotary to release to Appellee, Jessica Lynn Raker, without further order of court, the security Bar-B-Q Pit deposited to establish a *supersedeas* in a companion appeal at docket No. 1037 MDA 2016, upon Ms. Raker's presentation of an order dismissing that appeal, or a final unappealable order in Ms. Raker's favor against Bar-B-Q Pit.  We affirm.

The relevant facts and procedural history of this case are as follows. On June 16, 2010, Ms. Raker sued Bar-B-Q Pit in federal court for employment discrimination, alleging, *inter alia*, that while she worked as a server at Bar-B-Q Pit from November 2007 until July 2008, her boss, Hippocrates Deligiannis, a principal and/or owner of Bar-B-Q Pit, subjected

her to a hostile work environment due to constant sexual harassment. Ms. Raker complained to the Bar-B-Q Pit managers, who were Mr. Deligiannis' daughters; but they rebuked the complaints and retaliated by reducing Ms. Raker's hours of employment. On February 28, 2013, the federal district court granted judgment in Ms. Raker's favor on the issue of liability and scheduled a trial on damages. The court held a bench trial on damages on March 18, 2013; representatives of Bar-B-Q Pit failed to appear. After hearing Ms. Raker's uncontroverted testimony, the federal court entered judgment in Ms. Raker's favor in the amount of $112,878.80 ("federal judgment").

Ms. Raker filed a *praecipe* to transfer the federal judgment to the Berks County Court of Common Pleas on February 18, 2014, which was entered at the current docket No. 14-1877. Ms. Raker subsequently filed a *praecipe* for writ of execution. On April 4, 2014, the sheriff levied upon property located on the Bar-B-Q Pit premises.

Prior to the scheduled sheriff's sale, on April 24, 2014, Bar-B-Q Pit issued notice of filing for Chapter 7 bankruptcy, triggering an automatic stay of all proceedings. The bankruptcy court vacated the automatic stay on July 9, 2014, to allow Ms. Raker to resolve her rights to the levied property.

Meanwhile, the principals of Bar-B-Q Pit, and other related entities, claimed ownership of the levied property. On July 15, 2014, the sheriff issued a determination of ownership, deciding Bar-B-Q Pit did not own the

levied property. Ms. Raker filed objections to the sheriff's determination on July 24, 2014. On August 20, 2014, the writ was stayed and the levy was released.[1]

Shortly thereafter, on August 26, 2014, Ms. Raker filed a separate lawsuit in the Berks County Court of Common Pleas at docket No. 14-17806 ("tort case") against Anna's Bar-B-Q Pit, Ltd., Grecian Terrace, Ltd., Hippocrates Deligiannis, Anna Deligiannis, Eleni Deligiannis, and Georgine Deligiannis a.k.a. Georgine Zdravecki. In her tort complaint, Ms. Raker alleged counts of fraudulent transfer and successor liability. Essentially, Ms. Raker complained the tort defendants committed wrongful acts to avoid enforcement of the federal judgment by transferring Bar-B-Q Pit's assets to Anna's Bar-B-Q Pit and operating Anna's Bar-B-Q Pit in the same manner and location. The parties to the tort case reached a settlement on April 4, 2016, for $350,000.00. The tort defendants subsequently sought to undo the settlement agreement; so Ms. Raker made an oral motion to enforce the settlement agreement, which the court granted on May 26, 2016. On that date, the court entered judgment against the tort case defendants, jointly and severally, in the amount of $350,000.00, plus interest.[2]

_____

[1] The bankruptcy case was closed and terminated on September 4, 2014. The bankruptcy trustee found Bar-B-Q Pit had no assets to distribute.

[2] The tort case defendants filed a notice of appeal, which this Court quashed on procedural grounds by *per curiam* order on September 13, 2016. On May
*(Footnote Continued Next Page)*

On June 8, 2016, Ms. Raker filed another writ of execution concerning the federal judgment in the present case. Significantly, Ms. Raker had discovered testimony from Bar-B-Q Pit's accountant in other proceedings confirming that Bar-B-Q Pit actually owned certain property the sheriff had determined belonged to other entities back in April 2014.

Bar-B-Q Pit filed a motion to strike the writ of execution on June 10, 2016. On June 13, 2016, the court scheduled a hearing and stayed execution on the federal judgment pending the hearing and upon Bar-B-Q Pit's posting of a bond in the amount of $130,925.92 (the amount of the federal judgment plus interest). Bar-B-Q Pit posted the requisite amount with the Prothonotary in the form of two cashier's checks. Following a hearing, the court denied Bar-B-Q Pit's motion to strike the writ of execution on June 21, 2016. The next day, Bar-B-Q Pit timely filed a notice of appeal at the related docket No. 1037 MDA 2016.

On July 12, 2016, Ms. Raker filed a motion to clarify the court's June 13, 2016 and June 21, 2016 orders. Ms. Raker explained that on July 1, 2016, the sheriff went to the former Bar-B-Q Pit premises (now operating as Anna's Bar-B-Q Pit), levied upon some of the property, and scheduled a sheriff's sale for July 26, 2016. According to Ms. Raker, counsel for Bar-B-Q

_(Footnote Continued)_ _____

9, 2017, our Supreme Court denied the tort case defendants' petition for allowance of appeal. On August 7, 2017, the tort case defendants filed a petition for writ of *certiorari* in the United States Supreme Court, which is still pending.

- 4 -

Pit told the sheriff the sale was stayed because Bar-B-Q Pit had posted security in accordance with the court's June 13, 2016 order to stay the sale. Ms. Raker said the sheriff would not proceed with the sale until it received clarification from the court concerning whether the stay of execution was still in place. Ms. Raker argued the court should clarify its earlier orders to make clear the stay was no longer in effect because the security Bar-B-Q Pit had posted was intended to stay execution only until the court ruled on Bar-B-Q Pit's motion to strike the writ of execution. Once the court denied Bar-B-Q Pit's motion, the stay was dissolved and Bar-B-Q Pit was entitled to the return of its security.

Bar-B-Q Pit objected to Ms. Raker's motion to clarify, arguing, *inter alia*, the court lacked jurisdiction to modify its earlier orders where Bar-B-Q Pit had appealed the June 21, 2016 order and the matter was no longer pending in the trial court.

On July 14, 2016, the court held a hearing. Ms. Raker initially argued Bar-B-Q Pit failed to post appropriate security as specified by the court's June 13, 2016 order because cashier's checks do not constitute posting a "bond." Ms. Raker explained the difference between posting cashier's checks and a bond is that, with the former, there is no "automatic default" provision requiring immediate payment to Ms. Raker if she prevails on appeal. Even if the cashier's checks were sufficient for purposes of complying with the June 13, 2016 order, Ms. Raker insisted those checks only stayed execution

pending the court's ruling on Bar-B-Q Pit's motion to strike. Once Bar-B-Q Pit filed a notice of appeal, Ms. Raker claimed Bar-B-Q Pit was required to post additional security to establish a *supersedeas* to stay execution pending the appeal.

The court agreed Bar-B-Q Pit was required to post additional security to establish a *supersedeas*. Under Pa.R.A.P. 1731 (governing automatic *supersedeas* for orders for payment of money), Bar-B-Q Pit would have to post 120% of the amount owed to Ms. Raker. The parties disputed whether Bar-B-Q Pit was required to post 120% of the principal on the federal judgment or the total federal judgment including accrued interest. The court accepted Ms. Raker's position to calculate 120% of the principal plus interest, totaling $156,401.22. After consulting with her client, counsel for Bar-B-Q Pit asked for one week to obtain the additional security. The court granted that request. At the conclusion of the hearing, the court said it would enter an order dissolving the temporary stay of execution entered on June 13, 2016, and directing the sheriff to proceed with the sheriff's sale unless Bar-B-Q Pit posts bond in strict accordance with Rule 1731. Both parties agreed to the court's proposed order.

Immediately following the hearing, the court entered the order it had proposed to the parties: (1) dissolving the temporary stay of execution set forth in the June 13, 2016 order as moot; (2) and directing the sheriff to proceed with the sheriff's sale scheduled for July 26, 2016, unless Bar-B-Q

Pit posted a bond in strict accordance with Pa.R.A.P. 1731, to stay execution pending a final unappealable order. On July 18, 2016, Bar-B-Q Pit posted a third cashier's check with the Prothonotary in the amount of $25,475.30.[3]

The parties appeared before the court again on July 21, 2016. Ms. Raker argued Bar-B-Q Pit failed to comply with the court's July 14, 2016 order because cashier's checks do not constitute a "bond." Bar-B-Q Pit said it complied with Rule 1731, which does not specify the manner of security. The court noted Bar-B-Q Pit had agreed to the court's proposed order at the conclusion of the July 14, 2016 hearing and by depositing cashier's checks, Bar-B-Q Pit ignored the language of the order requiring a "bond" and made it more difficult for Ms. Raker to collect on her judgment upon a final order in her favor. Rather than requiring Bar-B-Q Pit to substitute the security already posted, the court modified its July 14, 2016 order and directed the Prothonotary to release to Ms. Raker, without further order of court, the three cashier's checks Bar-B-Q Pit deposited, upon dismissal of Bar-B-Q Pit's appeal or a final unappealable order in Ms. Raker's favor. Bar-B-Q Pit timely filed a notice of appeal on Monday, August 22, 2016. On September 1, 2016, the court ordered Bar-B-Q Pit to file a concise statement of errors complained of on appeal. Bar-B-Q Pit timely complied on September 20,

---

[3] The earlier two cashier's checks totaling $130,925.92 remained with the Prothonotary, so the third cashier's check brought the amount Bar-B-Q Pit deposited to $156,401.22.

2016.

Bar-B-Q Pit raises the following issues for our review:

WHETHER THE HONORABLE TRIAL COURT ERRED BY MODIFYING THE ORIGINAL JULY [14], 2016, ORDER TO STATE THAT THE SECURITY PLACED INTO THE PROTHONOTARY UNDER PA.R.A.P. 1734 "SHALL BE IMMEDIATELY PAID TO [MS. RAKER] WITHOUT FURTHER ORDER OF THIS COURT UPON [MS. RAKER'S] PRESENTATION OF THE SAID ORDER OF DISMISSAL OR FINAL UNAPPEALABLE ORDER IN [MS. RAKER'S] FAVOR AND AGAINST [BAR-B-Q PIT]?"

DID THE COURT'S ORDER FOR $156,401.22 SECURITY COMPLY SPECIFICALLY WITH PA.R.A.P. 1731?

(Bar-B-Q Pit's Brief at 4).

For purposes of disposition, we combine Bar-B-Q Pit's issues. Bar-B-Q Pit initially argues the court lacked jurisdiction to enter the July 14, 2016 and July 21, 2016 orders because an appeal was already pending at docket No. 1037 MDA 2016. Even if the court had jurisdiction, Bar-B-Q Pit asserts it did not have to post additional security after it posted the initial two cashier's checks totaling $130,925.92 (while the court considered Bar-B-Q Pit's motion to strike the writ of execution) because Bar-B-Q Pit intended those funds to act as a *supersedeas* to stay execution in the event of an appeal. Bar-B-Q Pit emphasizes its principals also posted security in the tort case appeal in the amount of $420,000.00. Bar-B-Q Pit complains the amount owed on the federal judgment is $112,878.80. To the extent Bar-B-Q Pit had to post additional security after the court's ruling on the motion to strike the writ of execution, Bar-B-Q Pit claims it had to post 120% of only

$112,878.80. Bar-B-Q Pit insists Rule 1731 mentions nothing about interest. Even if the court's July 14th order was legally sound, Bar-B-Q Pit submits the July 21st order substantially modified the July 14th order because it required the Prothonotary to release the cashier's checks to Ms. Raker upon a final unappealable order in her favor, without further order of court. Bar-B-Q Pit submits the trial court's actions were "outrageous," particularly when considering the amount the tort defendants had to post to establish a *supersedeas* in that appeal. Bar-B-Q Pit concludes the court erred by entering the July 14th and July 21st orders, and this Court must vacate both orders or, in the alternative, vacate the July 21st order. We disagree.

Initially, as a general rule, once an appeal is taken, "the trial court is divested of jurisdiction over the subject matter until further order of the appellate court reinstating jurisdiction."[4] ***Tanglwood Lakes Community Ass'n v. Laskowski***, 616 A.2d 37, 38-39 (Pa.Super. 1992). Nevertheless, Pennsylvania Rule of Appellate Procedure 1701 enumerates the actions a trial court has authority to perform, once a party initiates an appeal:

> **Rule 1701. Effect of Appeal Generally**
>
> **(a) General rule**. Except as otherwise prescribed by these rules, after an appeal is taken…, the trial court…may

---

[4] We disagree with Ms. Raker's contention that Bar-B-Q Pit waived its jurisdictional argument for failing to specify that claim in its Rule 1925(b) statement. ***See generally Weir v. Weir***, 631 A.2d 650 (Pa.Super. 1993) (explaining trial court's lack of subject matter jurisdiction is non-waivable issue that can be raised at any stage of proceedings).

no longer proceed further in the matter.

**(b)  Authority of a trial court or agency after appeal.** After an appeal is taken…, the trial court…may:

(1)  Take such action as may be necessary to preserve the *status quo*, correct formal errors in papers relating to the matter, cause the record to be transcribed, approved, filed and transmitted, grant leave to appeal in *forma pauperis*, **grant *supersedeas***, and take other action permitted or required by these rules or otherwise ancillary to the appeal or petition for review proceeding.

(2)  Enforce any order entered in the matter, unless the effect of the order has been superseded as prescribed in this chapter.

*  *  *

Pa.R.A.P. 1701(a), (b)(1-2) (emphasis added).  "[A] prerequisite to the issuance of a *supersedeas* is the existence of a valid appeal."  ***Fiore v. Oakwood Plaza Shopping Center, Inc.***, 585 A.2d 1012 (Pa.Super. 1991). "Absent a *supersedeas*, the trial court retains its power to enforce orders even after an appeal has been taken."  ***Glynn v. Glynn***, 789 A.2d 242, 245 n.4 (2001) (*en banc*).  ***See also*** Pa.R.A.P. 1701(b)(2).

Instantly, notwithstanding Bar-B-Q Pit's appeal at docket No. 1037 MDA 2016, the court retained jurisdiction to enter the July 14th and July 21st orders to grant Bar-B-Q Pit a *supersedeas* pending the appeal.  ***See*** Pa.R.A.P.  1701(b)(1).   Absent  the  orders  granting  Bar-B-Q  Pit  a *supersedeas*, the trial court could have enforced the June 21, 2016 order denying Bar-B-Q Pit's motion to strike the writ of execution, and directed the sheriff to proceed with the sheriff's sale.  ***See*** Pa.R.A.P. 1701(b)(2); ***Glynn,***

*supra*.   Thus, the court had authority to enter the orders at issue, which inured to Bar-B-Q Pit's benefit, and there are no jurisdictional impediments to our review.

Turning to the merits of this appeal, after a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Madelyn S. Fudeman, we conclude Bar-B-Q Pit's issues merit no relief.[5]   The trial court opinion comprehensively discusses and properly disposes of the questions presented.  (***See*** Trial Court Opinion, filed October 7, 2016, at 4-7) (finding: **(1)** at July 21, 2016 hearing, Bar-B-Q Pit acknowledged it was required to post bond to comply with July 14, 2016 order but instead posted cashier's checks; on July 21, 2016, court directed Prothonotary to release Bar-B-Q Pit's posted cashier's checks to Ms.

_____

[5] Ms. Raker claims Bar-B-Q Pit's issues are waived for failing to file post-trial motions under Pa.R.C.P. 227.1, following the court's July 14th and July 21st orders.  Nevertheless, the court's hearings on July 14th and July 21st were not trials and were not "trial-like."  No testimony or evidence was submitted at either hearing.  The court merely held hearings, limited to oral argument from counsel, to decide the amount of and manner in which Bar-B-Q Pit needed to post security to establish a *supersedeas* pending appeal.  Thus, no post-trial motions were required.  ***See*** Pa.R.C.P. 227.1(c), *Note* (explaining motion for post-trial relief may be filed following jury or bench trial; motion for post-trial relief may not be filed to orders disposing of **other proceedings which do not constitute trial**); ***Newman Development Group of Pottstown, LLC v. Genuardi's Family Markets***, 617 Pa. 265, 52 A.3d 1233 (2012) (holding no post-trial motions are necessary where proceeding did not amount to "trial").  Therefore, Bar-B-Q Pit's issues are not waived for failing to file post-trial motions.  Additionally, we deny Ms. Raker's requests in her brief to quash this appeal and to sanction Bar-B-Q Pit for its failure to comply with technical rules of appellate procedure and "wasting" this Court's time by filing a frivolous appeal.

Raker, without further order of court, upon dismissal of Bar-B-Q Pit's appeal or final unappealable order in Ms. Raker's favor; modification served to conform manner of security Bar-B-Q Pit had posted to terms of July 14, 2016 order, which reflected parties' agreement for Bar-B-Q Pit to post bond; modification order permitting Prothonotary to release money to Ms. Raker without further order of court conforms directly to Pa.R.A.P. 1734(b) (discussing terms of bond), and reflects intent of parties as established on record; further, court's modification order was necessary to accommodate Bar-B-Q Pit, after it failed to post appropriate bond; **(2)** under Pa.R.A.P. 1731(a), amount of *supersedeas* security is 120% of amount found due and remaining unpaid; underlying federal judgment is $112,878.08; to stay execution pending court's decision on Bar-B-Q Pit's motion to strike writ of execution, court required Bar-B-Q Pit to post $130,925.92, which represented federal judgment principal, plus interest at legal rate; court found "amount due" included interest; 120% of total amount owed to Ms. Raker including interest equals $156,401.22; thus, court's July 14, 2016 order requiring *supersedeas* bond in amount of $156,401.22 complied with Rule 1731; proceedings in this case and in related tort case demonstrate Bar-B-Q Pit and tort defendants have engaged in protracted efforts to manipulate judicial process to avoid payment of 2013 federal judgment). Accordingly, we affirm on the basis of the trial court's opinion.

J-A09044-17

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/18/2017

- 13 -

Circulated 09/25/2017 01:51 PM

JESSICA LYNN RAKER,
      Plaintiff

      v.

BAR-B-Q PIT, INC.,
      Defendant

: IN THE COURT OF COMMON PLEAS
: OF BERKS COUNTY, PENNSYLVANIA
:
: CIVIL ACTION - LAW
:
:
:
:
: NO: 14-1877
:
: FUDEMAN, J.
:

Barry W. Sawtelle, Esquire
Michael M. Monsour, Esquire
Attorneys for the Plaintiff

Sharon L. Gray, Esquire
Attorney for the Defendant

RECEIVED PROTHONOTARY'S OFFICE
BERKS COUNTY, PA
HANNAH R. SUTTON
PROTHONOTARY
2016 OCT -7 A 7:54

<u>Madelyn S. Fudeman, J.</u>        **Opinion**        <u>October 5, 2016</u>


This is Defendant's second appeal arising from a transferred federal judgment on which

Plaintiff seeks execution. This Opinion is not supplemental to the previous Opinion as it

addresses a separate appeal filed by Defendant to this docket.


## Procedural History

The instant appeal is the third filed by Defendant's counsel against this Court's Orders

involving the same Plaintiff but different defendants in two separate cases.

On May 31, 2016, Defendant's counsel filed an appeal from this court's Order enforcing

a settlement agreement in a tort case claiming successor liability and piercing the corporate veil

following an eleven day bench trial which culminated in a settlement agreement on the record.

After a full hearing giving Defendants an opportunity to present their case as to why they should

not be compelled to comply with the settlement agreement to which they consented under oath



and on the record, this court entered an Order enforcing the agreement. The appeal was taken by Defendants, docketed to 876 MDA 2016 in the Superior Court, and this Court filed its opinion in the appeal on June 28, 2016.

Defendant, Bar-B-Q Pit, Inc., not a party to the tort/settlement enforcement case, subsequently appealed this Court's Order denying Defendant's request to allow the supersedeas security in the settlement enforcement case to also operate as supersedeas in its appeal from Plaintiff's execution against its property ("Execution Case"). The Execution Case is the subject of the instant appeal and is an entirely different case with a different subject matter, defendant and docket number than the tort/settlement enforcement case. The first appeal in the Execution Case was filed on June 22, 2016. This Court filed its Opinion on August 5, 2016.

Finally, Defendant Bar-B-Q Pit, Inc. appeals from this Court's Order of July 21, 2016 in the Execution Case, modifying its Order of July 14, 2016, which was entered with the agreement of Defendant's counsel. (N.T. 7/21/16 p. 3, N.T. 7/14/16 p. 14, 30-32).

The July 14, 2016 Order provided that Defendant would post a bond in the amount $156,401.22 as security for the supersedeas Defendant requested in the Execution Case. It cannot be emphasized enough that both the amount and manner of security was agreed to by Defendant's counsel after she consulted with her client. (N.T. 7/21/16 p.3, N.T. 7/14/16 p. 14) Instead of a bond, Defendant posted three separate cashier's checks. Plaintiff appeared before this Court and argued that Defendant's failure to comply with the Order by posting a bond as they agreed to do, and as the Order required, should operate to dissolve the stay and permit execution on the federal court judgment entered well over a year prior, and from which no appeal was ever taken.

2

Instead, this Court modified its Order to permit the security posted by Defendant to operate as supersedeas, but allowing Plaintiff access to the checks posted as security without necessitating further court proceedings in the event that Plaintiff were to obtain a final unappealable order in her favor, or dismissal of Defendant's Appeal. Essentially, this Court conformed its Order to permit Defendant's security to operate as supersedeas while also affording Plaintiff the same conditions as would have applied had Defendant posted a bond as agreed, and the Order of July 14, 2016 provided.

## QUESTIONS PRESENTED

1) Whether the honorable trial Court erred by modifying the original July 21, 2016 Order to state that the security placed into the prothonotary under Pa. R.A.P. 1734 shall be paid immediately to Plaintiff without further order of this court upon Plaintiff's presentation of the said Order of dismissal or final unappealable Order in Plaintiff's favor and against Defendant.

Answer: The trial Court did not err. Furthermore, this court did not modify its July 21, 2016 Order as stated in Defendant's Concise Statement of Errors. The Order of July 21, 2016 modified the July 14, 2016 Order in accordance with the Rules of Appellate Procedure.

2) Did the Court's Order for $156,401.22 security comply specifically with Pa. R.A.P. 1731?

Answer: The Court's Order of July 14, 2016 requiring a security of $156,401.22 was in strict compliance with Pa. R.A.P. 1731. The sum was calculated and agreed to by counsel for both parties. (N.T. 7/14/16 pp. 30- 32 and p. 34 lines 5-8).

3

## DISCUSSION

First, Defendant appeals on the basis that this Court failed to comply with Rule 1734 of the Pennsylvania Rules of Appellate Procedure when it entered its July 21, 2016 Order modifying its previous Order.

Rule 1734 states that "Legal tender of the United States" can be an appropriate security deposited with the clerk. Pa. R.A.P. §1734(a)(1). Rule 1734 (a) further lists optional forms of payment to the prothonotary for a supersedeas as deemed appropriate by the Court. Pa. R.A.P. §1734(a). During the proceedings on July 21, 2016, Defendant's counsel acknowledged that the Order of July 14, 2016 required posting of a bond as security, and that Defendants instead posted cashier's checks. (N.T. 7/21/16 p.6-8).

According to Section 1734(b) of the Rules of Appellate Procedure:

> A supersedeas bond shall be conditioned for the satisfaction of the order if it is affirmed or if for any reason the appeal is dismissed, or for the satisfaction of any modification of the order and in either case costs, interest and any damages for delay that may finally be awarded. Pa. R.A.P. 1734(b).

On July 21, 2016, this Court entered its Order directing the prothonotary to pay the posted cashier's checks to Plaintiff without further order of Court in the event of dismissal of the appeal or final unappealable order of Court in favor of Plaintiff and against Defendant. The purpose of the modification was to conform the manner security posted by Defendant to the terms of Order of July 14, 2016 which Order reflected Defendant's agreement post a bond. (N.T. 7/21/16 p. 3, 7, 8).

The record of the July 21, 2016 reflects that the monies held by the prothonotary shall be paid to Plaintiff and her law firm without necessitating further court action in the event of a final unappealable order. (N.T. 7/21/2016). The language in this Order conforms directly to Rule

4

1734(b) by protecting Appellee in the event the Order is affirmed or the appeal is dismissed. Pa. R.A.P. 1734(b).

The Superior court has determined that "[a] supersedeas bond is a contract by which a surety obligates itself to pay a final judgment rendered against its principal under the conditions stated in the bond." Grimme Combustion, Inc. v. Mergentime Corp., 867 A.2d 602 at 611 (Pa. Super 2005), citing Amwest Surety Ins. Co. v. Graham, 949 S. W2d 724 (Tex.Ct.App. 1997). The Court goes on to explain that for a supersedeas contract, like any other contract, "the cardinal rule of construction is to ascertain the intent of the parties." Id.

This Court considered the intent of the parties. Counsel for both parties agreed to the posting of a bond by the Defendant to establish a supersedeas with security in the amount of $156,401.22 on July 14, 2016. (N.T. 7/14/16 p.14 and pp. 30-32). Defendant posted cashier's checks instead of a bond. Therefore, this Court entered its Order of July 21, 2016 directing the prothonotary to release the posted funds to the Plaintiff in the event of a dismissal or final unappealable decision in Plaintiff's favor. The July 21, 2016 Order conforms to Rule 1734(b), and reflects the intent of the parties as established on the record. Further, this Court's Order of July 21, 2016 was for the purpose of accommodating to Defendant, who had been ordered, and indeed had agreed to post bond in the appropriate amount.

Second, Defendant appeals on the basis that this Court's Order of July 14, 2014 setting the security amount at $156,401.22 did not comply specifically with Pa. R.A.P. 1731.

Rule 1731 specifically states:

> ... [A]n appeal from an order involving solely the payment of money shall, ... operate as a supersedeas upon filing with the clerk of the lower court of appropriate security in the amount of 120% of the amount found due by the lower court and remaining unpaid. Pa. R.A.P. 1731(a)

5

During discussion on the record, procedures from both Pa. R.C.P §3121, and Pa. R.A.P. §1731 were interchangeably referred to by Defendant's counsel. When asked to choose one or the other, defense counsel conferred with Defendant and elected to proceed under Pa. R.A.P. §1731. (N.T. 7/14/16 p. 17). After further discussion and calculations, Defendant's counsel acknowledged that the appropriate amount of supersedeas security as required by Rule 1731 was $156,401.22, to represent 120% of the amount due. (N.T. 7/14/16 p.31). The amount found due in the previous order of this Court was the original principal amount of the federal judgment plus interest at the legal daily rate from the date of the 2013 federal judgment. (N.T. 7/14/16 p. 30.) (Order of 6/13/16).

Rule 1731 specifies that the supersedeas security must be "120% of the amount found due by the lower court and remaining unpaid." Pa. R.A.P. 1731(a). The amount found due by this Court was the principal amount of the federal judgment, $112,878.08, plus interest at the legal rate, totaling $130,295.92. (Order of 6/13/16). As calculated by Plaintiff's counsel and acknowledged by Defendant's counsel, 120% of $130,295.92 due for the supersedeas according to Rule 1731(a) was $156,401.22. (N.T. 7/14/16 p. 30-31). Therefore, this Court's July 14, 2016 Order requiring a supersedeas bond in the aggregate amount of $156,401.22 strictly complied with Pa. R.A.P. 1731.

Further, on July 21, 2016, Defendant's counsel stated on the record that the Order of July 14, 2016 strictly complied with Rule 1731, contradicting her own complaint on appeal. (N.T. 7/21/16 p. 7). Defendant's counsel also acknowledged her agreement to the July 14, 2016 Order. (N.T. 7/21/16 p. 3).

Finally, after hearing eleven days of testimony in the tort case, and over the course of each the above mentioned actions, and the appeals therefrom, it has become clear to this Court

that Defendant Bar-B-Q Pit, Inc. and the defendants in the settlement enforcement case have engaged in protracted efforts to manipulate the judicial process in order to avoid payment of the federal judgment entered on November 25, 2013.

For the foregoing reasons, this Court requests that this Appeal be Denied.

BY THE COURT:

MADELYN S. FUDEMAN, J.

RECEIVED
PROTHONOTARY'S OFFICE
2016 OCT -7 A 7: 54
BERKS COUNTY, PA
MARIANNE R. SUTTON
PROTHONOTARY

7